771 N.W.2d 151 (2009)
17 Neb. App. 633
STATE of Nebraska, appellee,
v.
Denise M. SMITH, appellant.
No. A-08-1013.
Court of Appeals of Nebraska.
May 26, 2009.
*152 James W. Knowles, Jr., and Matthew J. Knowles, of Knowles Law Firm, Omaha, for appellant.
Paul D. Kratz, Omaha City Attorney, Martin J. Conboy III, Omaha City Prosecutor, and Kevin J. Slimp, Lincoln, for appellee.
IRWIN, CARLSON, and MOORE, Judges.
IRWIN, Judge.

I. INTRODUCTION
Denise M. Smith was charged under Omaha city ordinances with the crimes of caretaker neglect and giving false information to a police officer for events surrounding the injury of an infant at Smith's childcare facility. Smith was convicted of both offenses in the county court for Douglas County, Nebraska, and her convictions and sentences were affirmed by the district court. In this appeal, Smith challenges the sufficiency of the evidence to support the caretaker neglect conviction and alleges *153 that the sentences imposed were excessive. We find the evidence insufficient to support the caretaker neglect conviction, and we reverse that conviction and sentence. We affirm the false information conviction and sentence.

II. BACKGROUND
The events giving rise to this case occurred on or about March 17, 2008. The events concern injuries sustained by Dravion Settles, who was then 7 months old. At the time, Dravion was in daycare at "Acquainted With an Angel" day-care center. Smith transported Dravion from his home to Acquainted With an Angel in the mornings and back home in the evenings.
On March 17, 2008, Smith picked up Dravion from Acquainted With an Angel and then stopped at the daycare facility Smith owned, "ABC 123" (ABC). Smith had an errand to run and left Dravion at ABC, along with approximately eight other children ranging in age from infants to teenagers, in the care of one adult, Shawnee Allen (Shawnee). According to Smith's testimony, when she left to run her errand, Dravion was being held by Shawnee.
Smith was gone for 45 minutes to an hour, and when she returned to ABC, "Shawnee had the kids ready" to be transported to their homes in a van. Smith testified that she did some brief cleaning up and that "[b]y the time [she] did that, everybody was in the van already." Shawnee loaded Dravion in the van. Smith dropped Dravion off at his home and left.
Dravion's mother testified that she went out to the van and picked up Dravion. She testified that there was a cover over Dravion's car seat, so she did not observe Dravion when taking him from the van. She took Dravion into the house, used the restroom, and then removed the cover from Dravion's car seat. When she removed the cover, she discovered that Dravion was not moving, was not breathing properly, and had a bite mark on his cheek, as well as bruises under his chin and purple coloring because of his breathing difficulties. Dravion's mother called for medical attention and also called Smith.
Dravion suffered numerous injuries while he was at ABC. According to the evidence adduced at trial, Dravion suffered two broken legs, a broken arm, a bite mark to the face, and postobstructive pulmonary edema. The injuries were caused by an 8-year-old child at the daycare.
During the investigation of this case, police officers interviewed Smith on at least three occasions. During those interviews, Smith provided inconsistent information to the police officers. Among the inconsistencies was information about the number and identity of adults present at ABC while Smith was on her errand and Dravion was injured. Smith initially told police officers that both Shawnee and another adult were present at ABC, but later acknowledged that Shawnee was the only adult. Smith also acknowledged to police officers that Shawnee was "not a licensed daycare provider through ABC."
The evidence adduced at trial indicates that on March 17, 2008, Shawnee was licensed to work at Acquainted With an Angel, the daycare center where Dravion was enrolled during the day. There also was uncontradicted evidence that Shawnee was "an excellent provider" who was capable of watching eight or nine children by herself. There was also evidence that Smith had taken steps toward having Shawnee licensed to work at ABC, but that the paperwork had not yet been completed. Finally, there was evidence that Shawnee had not yet been authorized to work at ABC "because there's a past investigation with the State going on with *154 Shawnee," but there was no evidence adduced concerning the subject of the investigation.
On April 24, 2008, the State filed a criminal complaint in county court charging Smith with caretaker neglect and providing false information to law enforcement. Both charges alleged violations of ordinances of the city of Omaha.
At the conclusion of the trial in the county court, the court made the following specific findings:
The Court notes that there's no question that [Smith] was the owner of this childcare facility. And that she gave several different versions to the police officer. And there's no question that the Court finds her guilty of false information.
With respect to the negligent caretaker neglect ... the Court notes that Sergeant Thorson's testimony was that this child was in trauma and in critical condition, and that there were several versions given by [Smith]. But the thing that was so clear to this Court was that prior to [Smith's ] leaving on her 60-minute errand, she noticed this bite mark ... on the child's cheek. Sergeant Thorson testified that ... Shawnee ... was holding the minor child and that [Smith ] saw the mark on the cheek.

At this point, a simple check would have revealed the extent of this minor child's injuries, and that they were life-threatening and that that child should have there and then been transported to a hospital. Instead of checking further, seeing a bite mark on the cheek, she left the child ... for 60 minutes and then transported [the child] back home and didn't bother to tell [the child's ] mother about the bite mark on the cheek or any other injury or the crying or anything. And it is that very delay that endangered the child's life and physical health and the Court finds [Smith] guilty of negligent minor care.

(Emphasis supplied.) The county court sentenced Smith to two concurrent sentences of 60 days in jail.
On appeal, the district court affirmed the convictions and sentences. The district court specifically noted that "the County Court's reference to one aspect of the evidence was incorrect," but concluded that there was sufficient evidence to uphold both convictions beyond a reasonable doubt. This appeal followed.

III. ASSIGNMENTS OF ERROR
Smith has assigned two errors on appeal. First, Smith asserts that there was insufficient evidence to support the caretaker neglect conviction. Second, Smith asserts that the sentences imposed were excessive.

IV. ANALYSIS

1. SUFFICIENCY OF EVIDENCE
Smith first challenges the sufficiency of the evidence to support the caretaker neglect conviction. We note that Smith has not assigned any error or presented any argument challenging her conviction for providing false information to law enforcement. With respect to the caretaker neglect conviction, Smith argues that there was no evidence she was present at the time of the injuries and no evidence that she did or failed to do anything that a reasonable person would have done in this case. After our review of the record, we agree that the State failed to adduce evidence indicating that Smith acted negligently in this case.
The city of Omaha's ordinance under which Smith was charged provides: "(1) A person commits caretaker neglect if he or she negligently causes or permits: .... (b) A minor child to be placed in a situation *155 that endangers his or her life or physical or mental health[.]" Omaha Mun. Code, ch. 20, art. IV, § 20-97 (2004). The plain language of this ordinance requires proof by the State that Smith acted negligently in placing Dravion in a situation that endangered his life or physical or mental health.
There is no dispute in this case that Dravion suffered severe injuries while at ABC. There is no dispute that Smith owned and operated ABC or that Smith was responsible for leaving Dravion at ABC in Shawnee's care. The issue is whether Smith's action of leaving Dravion in Shawnee's care was negligence.
The State's argument on appeal amounts to an assertion that Smith acted negligently because she left Dravion in the care of an adult who was not licensed to provide daycare at ABC and who was not an employee of ABC. The uncontradicted evidence at trial, however, indicates that Shawnee was licensed to provide childcare at the facility Dravion attended during the day, that Shawnee was an excellent care provider, and that she had experience working at Head Start and other childcare facilities. There was no evidence adduced to indicate any reason Smith should have known or predicted that Dravion would suffer severe injuries or be improperly cared for while in Shawnee's care. There was no evidence adduced of any prior problems with the child who inflicted the injuries. There was no evidence adduced to indicate that Shawnee has ever failed to provide proper care before or that Smith was aware of any such failures.
We are aware of no authority, and the State has cited us to none, that would support a finding that leaving children in the care of an adult who is not licensed to provide child care at one facility, but who is licensed to provide care at another facility, amounts to negligence per se. Indeed, the fact that the Nebraska state statutes governing the licensing of childcare centers provide that "[i]f unlicensed child care is occurring in violation of [state statutes], the person providing the unlicensed care shall have thirty days to either become licensed or cease providing unlicensed child care" seems to suggest that despite the importance and function of licensing childcare providers, the failure to be properly licensed is not negligence per se. Neb.Rev.Stat. § 71-1914.01 (Cum.Supp. 2008).
A review of the county court's findings when convicting Smith indicates that the county court simply made a factual finding that is not supported by any evidence in the record. The county court's findings, as quoted above in the background section of this opinion, very clearly indicate that the county court based the conviction for caretaker neglect entirely on the county court's belief that one of the police officers testified Smith was aware of some injury to Dravion before Smith left Dravion in Shawnee's care and that Smith failed to seek medical attention for Dravion despite that knowledge. The county court specifically found that it was "that very delay" which resulted in Dravion's being placed in a situation injurious to his life or physical health.
All the evidence adduced at trial, however, indicates Smith had no such knowledge. Indeed, a review of the evidence adduced at trial indicates that Dravion was being held by Shawnee when Smith left and that Smith did not personally have occasion to observe Dravion again upon her return to ABC or delivery of Dravion to Dravion's mother. When Smith returned from her errand, Shawnee already had Dravion ready to be returned home, in his car seat, with a cover over it. Shawnee placed Dravion, in this condition, into the van. When Smith arrived at Dravion's home, Dravion's *156 mother took Dravion out of the van, still covered and in his car seat, and took him into the house. There is no evidence that Smith was aware of any injuries until she received a telephone call from Dravion's mother. The district court recognized this error by the county court, but found that some other unspecified evidence supported the conviction.
Without evidence that Smith knew or should have known of some reason that Shawnee was incapable of providing adequate careor that after Smith returned from her errand, she knew or should have known of the injuries and sought medical attention soonerthere is no evidence that Smith did anything unreasonable or failed to do anything reasonable. In this case, Smith left Dravion with an adult who, according to the record, was qualified and capable of providing childcare to Dravion. Indeed, Shawnee was actually employed by and licensed to provide childcare at the very facility Dravion spent his days. Despite the fact that Shawnee was not licensed to provide childcare at ABC, there is no evidence of negligence on behalf of Smith. Accordingly, we reverse the conviction and sentence for caretaker neglect.

2. EXCESSIVE SENTENCES
Smith also challenges the sentences imposed by the county court. We have already reversed her conviction and sentence for caretaker neglect. As such, the only remaining issue is whether the sentence of 60 days in jail was excessive for providing false information to law enforcement. We conclude that it is not an excessive sentence.
The applicable penalty for providing false information, under the city of Omaha's ordinances, is a fine not exceeding $500, imprisonment not exceeding 6 months, or both. See Omaha Mun.Code, ch. 1, § 1-10 (1980). A sentence imposed within statutory limits will not be disturbed absent an abuse of discretion. See State v. Wiemer, 15 Neb.App. 260, 725 N.W.2d 416 (2006). In this case, the sentence imposed is well within the applicable statutory limits and we find no abuse of discretion by the county court in imposing the sentence. As such, we find this assignment of error to be without merit.

V. CONCLUSION
We find the evidence insufficient to support the county court's conviction of Smith for caretaker neglect. We reverse the conviction and sentence for caretaker neglect. We find no abuse of discretion concerning the sentence imposed for providing false information to law enforcement, and Smith has not challenged her conviction for providing false information. We affirm the conviction and sentence for providing false information.
AFFIRMED IN PART, AND IN PART REVERSED.